IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION <br><br> Plaintiff <br><br> v. <br><br> Donald Anthony Walker Young, a/k/a D.A. Walker Young, Acorn Capital Management, LLC, and Acorn II, L.P. <br><br> Defendants <br><br> Oak Grove Partners, L.P. Neely Young, and W.B. Dixon Stroud Jr., <br><br> Relief Defendants | Civil Action No.: 2:09-cv-01634-JP |

DOCKET#_____
U.S. DISTRICT COURT
WEST DIST. OF WISCONSIN

JUL - 6 2009

09-MC-20

## ORDER APPOINTING A RECEIVER

AND NOW, this 25th day of June, 2009, upon consideration of the application of Louis C. Bechtle to serve as Receiver, and Plaintiff's Motion for appointment of a receiver to assume control of, marshal, pursue, and preserve the assets of defendants Donald Anthony Walker Young, Acorn II, L.P., Acorn Capital Management, L.P., and relief defendant Neely Young, as well as any other assets that may be collected in the captioned matter, and to protect those assets pending further order of the Court, it is ORDERED that the Motion is GRANTED.

IT IS THEREFORE ORDERED as follows:

A TRUE COPY CERTIFIED TO FROM THE RECORD
DATED: 6/29/09
ATTEST: _____
DEPUTY CLERK, UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

**I.**

This Court hereby takes exclusive jurisdiction and possession of the assets, monies, securities, choses in action, and properties, real and personal, tangible and intangible, of whatever kind and description, wherever situated, of Donald Anthony Walker Young, Neely Young, Acorn II, L.P., and Acorn Capital Management, LLC (collectively, the "Source Entities") and/or any entities that the Source Entities own or control or in which any of them have an interest (the "Receivership Assets").

This Court hereby further takes exclusive jurisdiction and possession of the books, records, computers, and documents, including without limitation, every writing of any kind, type, and description or other instrument or device by which, through, or upon which information has been recorded or preserved, including without limitation memoranda, notes, letters, bank records, business records, statements, checks, wire instructions and confirmations, tape recordings, electronic and digital media of all types, audio and video recordings, and photographs of the Source Entities and/or any and all entities the Source Entities own or control, or in which any of them has an interest, including without limitation, trusts, limited liability companies, corporations, partnerships, and joint ventures ("Receivership Records"); provided, however, that the SEC and criminal authorities may retain copies of any such records in their possession, custody, or control.

**II.**

IT IS FURTHER ORDERED THAT Louis C. Bechtle, Esquire is hereby appointed Receiver for the Receivership Assets and the Receivership Records, with the full powers of an equity receiver. The Receiver shall be the agent of this Court in acting as Receiver under this Order. The goal and purpose of the Receivership is to assume control of, marshal, pursue, and

preserve the Receivership Assets with the objective of maximizing the recovery of defrauded investors and, to the extent that the assets recovered may be inadequate to make them whole, ensuring that the distribution of those assets is as just and equitable as practicable. No bond shall be required to assure his conscientious performance of the duties and responsibilities imposed by this Order or as the Court directs.

Louis C. Bechtle (the "Receiver") is authorized to retain the law firm of Conrad O'Brien, P.C. (the "Law Firm") and Kroll, Inc. (the "Accountant") as his counsel and accountant, respectively, in connection with this appointment. With the Court's approval, the Receiver, the Law Firm, and the Accountant shall be compensated from the Receivership Assets for all reasonable fees and costs.

The agreed upon fee schedules are as follows, which hourly fee rates are hereby found to be reasonable:

### Receiver

| Name | Rate |
|---|---|
| Louis C. Bechtle | 495 |

### The Law Firm

| Name/ Position | Rate |
|---|---|
| P. Hamill | 350 |
| K. Kent | 325 |
| Associates | Up to 200 |
| Paralegals | 100 |

3

### The Accountant

| Name | Rate |
|---|---|
| W. Nugent/J. Slavek | $375 |
| Senior Manager | $205 |
| Manager | $175 |
| Senior Associate | $150 |
| Associate | $150 |
| Junior Staff | $135 |

The Law Firm and the Accountant may add or substitute other professionals with comparable experience at the same or lower rates, with the written approval of the Receiver and the SEC.

### III.

IT IS FURTHER ORDERED THAT the Receiver is hereby authorized on behalf of the Court to take exclusive custody, control, and possession of the Receivership Assets and Receivership Records, wherever located. Until further order of the Court, the Receiver shall have complete and exclusive control, possession, and custody of all Receivership Assets and Receivership Records; provided, however, that the Receiver will permit the SEC and criminal authorities access to Receivership Records upon request.

### IV.

IT IS FURTHER ORDERED THAT all persons, including without limitation the Source Entities, their past or present officers, agents, servants, employees, brokers, facilitators, trustees, escrow agents, attorneys, accountants, partners, and all persons in active concert or participation with them, and all other entities or persons who receive notice of this Order by personal service or otherwise, and specifically including without limitation any past or present bank or other financial or depository institution holding accounts for or on behalf of the Source Entities, or any entities the Source Entities own or control or in which they have an interest or for which any of

4

them is an authorized signatory, shall promptly: identify to the Receiver by account number and balance as of the time of service of this Order, or description of the nature and value as of the time of service of this Order, all Receivership Assets in the possession or under the control of any one or more of them; deliver to the Receiver all Receivership Assets in the possession or under the control of any one or more of them; and promptly surrender to the Receiver or his agents all Receivership Records, in the same manner as they would be provided if the Receiver were the signatory on the account. No separate subpoena shall be required.

### V.

IT IS FURTHER ORDERED THAT all persons, including without limitation the Source Entities, their past or present partners, officers, agents, servants, employees, brokers, bankers, facilitators, trustees, escrow agents, attorneys, accountants, creditors, claimants, and all persons in concert or participation with them, and all other entities or persons who receive notice of this Order by personal service or otherwise, are enjoined from interfering in any way with the operation of the Receivership or directly or indirectly destroying, mutilating, erasing, altering, concealing, disposing of, or disturbing the Receivership Assets and Receivership Records.

### VI.

IT IS FURTHER ORDERED THAT the Source Entities, including without limitation their past or present partners, officers, agents, servants, employees, brokers, bankers, facilitators, trustees, escrow agents, attorneys, accountants, and all persons in concert or participation with them, and all other entities or persons who receive notice of this Order by personal service or otherwise, are ordered to cooperate fully with the Receiver, the Law Firm, and the Accountant, by, among other things, (1) within five business days following service of this Order, providing to the Receiver a full accounting of all Receivership Assets and Receivership Records, including

any outside of the United States; (2) immediately transferring to the territory of the United States and delivering to the Receiver all Receivership Assets and Receivership Records located outside of the United States; (3) providing the Receiver access to Receivership Records and Receivership Assets outside of the United States by signing, upon request, any appropriate authorization; (4) delivering to the Receiver all Receivership Assets and Receivership Records, together with any related documents, records, names and contact information for persons who may be custodians or otherwise involved with or knowledgeable of the Receivership Assets or Receivership Records; (5) providing to the Receiver any information that the Receiver deems necessary to exercising his authority hereunder, including information regarding the location of and access to any and all documents, computer files and databases in their possession, custody or control relating to the Receivership Assets or Receivership Records, and including without limitation documents relating to the business operations of the Source Entities, the offer or sale of securities, the allegations of the Complaint in this action, and the disposition of investor funds; (6) providing all related financial records, computers, computer files, e-mail, passwords, keys, security cards, access codes for premises, vehicles, vessels, and aircraft; (7) granting access to safes or safe deposit boxes or any other facility containing Receivership Assets or Receivership Records; (8) upon the request of the Receiver, executing any consent, authorization, resolution, or other document as may be required by any person to confirm the authority of the Receiver; (9) upon the request of the Receiver, executing any consent, authorization, resolution, or other document as may be necessary to recover from foreign, federal, state, and local tax authorities any assets belonging to the Receivership Estate, including any overpayments of taxes; (10) upon the request of the Receiver, and subject only to the good faith assertion of privilege, providing to the Receiver complete and responsive answers under oath or under penalty of perjury to all

questions posed by the Receiver or the Law Firm; and (11) advising in writing all persons who owe a debt to the Source Entities that all debts should be paid to the Receiver.

## VII.

IT IS FURTHER ORDERED THAT all claims against and all actions to determine disputes relating to Receivership Assets or Receivership Records shall be filed in this Court. Except by leave of Court, during the pendency of the Receivership ordered herein, the Source Entities, and all other persons and entities, be and hereby are stayed from taking any action to establish or enforce any claim, right or interest for, against, on behalf of, in, or in the name of, the Source Entities, the Receiver, Receivership Assets, Receivership Records, or the Receivership's duly authorized agents acting in their capacities as such, or any combination of the same, including but not limited to, the following actions:

A. Commencing, prosecuting, litigating or enforcing any suit, except that actions may be filed to toll any applicable statute of limitations;

B. Accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, property of the Source Entities or any property claimed by the Source Entities, or attempting to foreclose, forfeit, alter, dilute, or terminate any of the Source Entities' interests in property, whether such acts are part of a judicial proceeding or otherwise;

C. Using self-help or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution or other process for purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon any property, wherever located, owned by or in the possession of the Source Entities, or the Receiver, or any agent of the Receiver;

7

D. Commencing, prosecuting, or litigating any proceeding initiated pursuant to the United States Bankruptcy Code; or

E. Doing any act or thing to interfere with the Receiver taking control, possession or management of Receivership Assets, or to in any way interfere with the Receiver or the duties of the Receiver; or to interfere with the exclusive jurisdiction of this Court over the property and assets of the Source Entities.

This paragraph does not stay the commencement or continuation of an action or proceeding by the Receiver pursuant to this Order, or any governmental unit, including the SEC or criminal authorities, in connection with such governmental unit's regulatory or enforcement powers.

## VIII.

IT IS FURTHER ORDERED THAT, upon the request of the Receiver, the United States Marshal's Office shall assist the Receiver in carrying out his duties to take possession, custody, or control of, or identify the location of, any Receivership Assets or Receivership Records.

## IX.

IT IS FURTHER ORDERED THAT, to enable the Receiver to carry out his duties hereunder, and only to the extent necessary to enable the Receiver to carry out his duties hereunder, the Receivership Assets are released from the Asset Freeze imposed by this Court by Order By Consent of Preliminary Injunction and Order Freezing Assets and Granting Other Relief entered on April 24, 2009 with respect to the Source Entities in the captioned case and placed in the possession and custody of, and under the control of the Receiver.

## X.

IT IS FURTHER ORDERED THAT, without further Court order unless specifically stated otherwise herein, the Receiver is authorized to:

8

A. Use reasonable efforts to determine the nature, location, and value of all Receivership Assets and Receivership Records, including without limitation to locate assets that may have been conveyed to partners or business associates of the Source Entities, to third parties, or otherwise concealed;

B. Sue for, collect, receive and take possession of all Receivership Assets and Receivership Records, including without limitation records related to customers or clients whose interests are now held by or under the direction, possession, custody or control of the Source Entities;

C. Assume full control of Receivership Assets and Receivership Records by, as he deems necessary, removing any officer, independent contractor, employee, or agent of the Source Entities from control and management of the affairs of the Source Entities and otherwise take steps to prevent the withdrawal or misapplication of Receivership Assets entrusted to the Source Entities;

D. Close or maintain the Source Entities' bank accounts and register such accounts in the name of the Receiver on behalf of the Receivership Estate; open and close bank accounts or other depository accounts as designated depositories for Receivership Assets; have exclusive control of and be made the sole authorized signatory for, all accounts at any bank, brokerage firm, or financial institution that has possession or control of any Receivership Assets; and execute checks or otherwise disburse money from those bank or securities accounts of the Source Entities to pay obligations of the Receivership as further set forth in this Order;

E. Open, close, manage and register securities accounts in the name of the Receiver on behalf of the Receivership Estate, including any such account of the Source Entities,

9

with authority to purchase, sell or retain securities in any such account;

F. Take all steps necessary to secure, preserve, hold and manage all Receivership Assets and Receivership Records, and perform all acts necessary to preserve the value of those assets including changing any locks, computer access codes, or other security mechanisms with respect to any premises or other equipment or assets that constitute or contain Receivership Assets or Receivership Records and removing from any premises or real estate constituting a Receivership Asset any person who attempts to interfere with the Receiver or his attorneys or agents in the performance of their duties;

G. Without breaching the peace, but if necessary with the assistance of local peace officers or U.S. Marshals, enter and secure any premises, wherever located or situated, in order to identify the location or existence of and take possession, custody, or control of Receivership Assets or Receivership Records including without limitation, the premises, files, and information systems, and take all steps that in his judgment he deems necessary or advisable to secure and protect Receivership Assets and Receivership Records; provided, however, that prior to such entry, any necessary legal process is obtained;

H. Make appropriate notification to the United States Postal Service or any post office or other mail depository to forward delivery to himself of any mail addressed to the Source Entities or any company or entity under the direction or control of the Source Entities, and open, inspect, and take possession and control all such mail to determine the location or identity of assets or the existence and amount of claims;

I. Make from Receivership Assets such payments, distributions, and disbursements as he deems necessary, advisable, or proper for carrying out the directions of, or exercising

10

the authority granted by this Order, including without limitation, any payments of insurance premiums to maintain or procure insurance coverage on Receivership Assets, and payments of expenses related to the care of Receivership Assets in the form of livestock; provided, however, that any request for the release of funds to pay expenses not necessary or advisable to secure Receivership Assets or Receivership Records, including without limitation, living and legal expenses of the Source Entities or of any Defendant or Relief Defendant in the captioned action, must be submitted by motion to the Court for adjudication unless the SEC has agreed, in writing, to the requested payment(s). Any payment, distribution, or disbursement made by the Receiver pursuant to this paragraph and without Court Order, shall be described in the next filed Receiver's Report;

J. Liquidate, windup, and terminate the business and affairs of the Source Entities, but, with authority, in aid of such liquidation, windup, and termination of the Source Entities, conduct the business operations of the Source Entities and the entities controlled by the Source Entities or in which the Source Entities have an interest, but only to the extent that the Receiver, in the exercise of his discretion, determines such continued conduct of the business to be advisable in the interest of maximizing the value of the Receivership Estate, including without limitation the collection of rents; suspension of operations; the institution, continuation or termination of any employment arrangement, lease, or contract; and the sale, abandonment, rental, lease, pledge, hypothecation, or other disposition of the Receivership Assets; and provided, however, that any such action shall be described in the next filed Receiver's Report or in the Receiver's Final Report, whichever in the Receiver's discretion is more practicable;

uct the

11

only   the extent that the

K.  Compromise or settle any claim of any creditors of the Source Entities, including those instances in which Receivership Assets serve as collateral to secured creditors; and, in connection therewith, surrender such assets to secured creditors upon such conditions as the Receiver determines are appropriate, including the waiver of any deficiency of collateral and release of any underlying obligation secured by the collateral;

L.  Renew, cancel, terminate or otherwise adjust any pending lease agreement to which any of the Source Entities is a party;

M.  With written approval of the SEC, engage or retain such additional persons, including without limitation securities traders, investment advisers, experts, appraisers, and other contractors and technical specialists, that the Receiver determines are necessary or advisable to assist him in carrying out his duties and responsibilities hereunder, provided, however, that any such action shall be described in the next filed Receiver's Report;

N.  Receive, collect, and maintain any and all sums of money due or owing to the Source Entities, whether the same are now due or are hereafter to become due and payable;

O.  During the pendency of the Receivership and prior to the final implementation of any Distribution Plan, receive, maintain, and include in any distribution, any additional sums ordered or paid to compensate victims of the fraud alleged in this matter of which the Receiver has notice and which are directed to the Receiver for distribution in this manner;

P.  Determine the identity of all partners in and investors with the Source Entities, the amounts invested, and previous payments to, or for the benefit of, such parties;

Q.  Issue subpoenas for testimony under oath or for documents, records, and other

tangibles, and engage in formal discovery on behalf of the Receivership Estate under the Federal Rules of Civil Procedure, on Court-approved adjusted procedures as, in the Receiver's discretion, are necessary or appropriate;

R. Institute, prosecute, defend, compromise, or adjust any actions or proceedings based on law or equity now pending or hereinafter instituted in this Court, as may in his discretion be necessary or advisable in order to preserve or increase the assets of the Receivership Estate or to otherwise carry out his duties as set forth herein and to effectuate the Court's orders, including, in the event that it is not practicable to recover Receivership Assets from third parties (such as investors with the Source Entities or recipients of gifts or donations from the Defendants) on a consensual basis without litigation, to institute and pursue, on behalf of and for the benefit of the Receivership Estate, in this Court or in any court of competent jurisdiction such actions or proceedings to impose a constructive trust, obtain possession and/or recover judgment with respect to persons or entities that hold, control, and/or received, directly or indirectly, assets or funds or proceeds from the Source Entities; provided, however, that prior to filing any action against any investor in Acorn LP or its related entities, the Receiver will determine whether the SEC objects to the filing of the action, and if so, shall seek, under seal, leave from the Court to file the action, with the SEC having five business days in which to file their objection(s), under seal, to the filing of the action;

S. Take any action that the Source Entities would be authorized to take;

T. Prepare and submit to the Court, the SEC, and the Defendants and Relief Defendants a Plan of Distribution providing for interim and/or final distributions with respect to the Receivership Assets and, as ordered, any other assets collected in this matter or any

13

related matter for approval by the Court;

U. Comply with all income tax reporting requirements, including the preparation and filing of tax returns, with respect to Receivership Assets and business and, as ordered, any other assets collected in this matter or any related matter; and be designated the administrator of any Distribution Fund, pursuant to section 468B(g) of the Internal Revenue Code (IRC), 26 U.S.C. § 468B(g), and related regulations, and satisfy the administrative requirements imposed by those regulations, including but not limited to (a) obtaining a taxpayer identification number, (b) filing applicable federal, state, and local tax returns and paying taxes reported thereon out of the Receivership Assets and/or the Distribution Fund, and (c) satisfying any information, reporting, or withholding requirements imposed on distributions from the Receivership Assets and/or the Distribution Fund;

V. Apply to this Court, with Notice provided as specified in paragraph XII below, for issuance of such other orders as may be necessary or in the judgment of the Receiver advisable in order to carry out the mandate of this Court and the duties of the Receiver.

## XI.

IT IS FURTHER ORDERED THAT copies of this Order may be served by any means, including facsimile transmission, upon any financial institution or other entity or person that may have possession, custody, or control of any Receivership Records or Receivership Assets.

## XII.

IT IS FURTHER ORDERED THAT, unless otherwise provided herein or by Court Order, "Notice" by the Receiver of an event or filing under this Order shall be deemed complete upon (a) provision of notice, or a copy of the filing at issue, including all filings with the Court,

to the SEC, the Defendants and Relief Defendants, and, with the exception of the sealed filings described in the last sentence of X.R., above, any person or entity which, in the Receiver's sole discretion, is directly impacted by the event or filing; and (b) publication of the notice or filing at issue, including all unsealed filings with the Court, on a public website maintained by the Receiver and/or his agents. Notice of this website shall be provided by the Receiver to parties in interest, including the Defendants, Relief Defendants, and known partners and/or investors and known creditors, along with a mechanism for alternative service for persons without internet access. Until and unless the Receiver receives written notification of change by the affected person or entity, Notice may be effected by facsimile, first class mail, or any receipted mail, to (i) the SEC at the address that follows, (ii) the Defendants and Relief Defendants at the address(es) of record with the Court clerk, and (iii) all other persons or entities at their last publicly known address or address filed with the Clerk of Court.

```
Catherine E. Pappas, Esq.
United States Securities and
Exchange Commission
701 Market Street, Suite 2000
Philadelphia, PA 19106
Facsimile: 215-597-2740
```

### XIII.

IT IS FURTHER ORDERED THAT the Receiver shall:

A.     Keep the SEC apprised at reasonable intervals of developments concerning the operation of the Receivership, and provide to the SEC, upon request, copies of any documents or tangible things under the control of the Receiver;

B.     Within 120 days of this Order, submit a preliminary report in the form of the first Receiver's Report to the Court, the SEC, and the Defendants and Relief Defendants, subject to such reasonable extensions as the Court may order, to the extent reasonable, in the format of the standardized Fund Accounting Report provided to the Receiver by the

15

SEC, and setting forth the following information:

1. All assets, money, funds, securities, and real or personal property currently held directly or indirectly as Receivership Assets, and any liabilities pertaining thereto, including without limitation, bank accounts, brokerage accounts, investments, business interests, and real and personal property, wherever situated, identifying and describing each asset and liability, its current location and amount;

2. A list of investors with the Source Entities, and to the extent practicable, the amount of principal invested by each investor, and the amounts withdrawn and/or otherwise paid to each investor; and

3. A plan and estimated schedule for further anticipated activities of the Receiver with respect to the Receivership Estate. Thereafter, the Receiver shall file supplemental reports of the same nature on the semiannual anniversary of the first report, or as otherwise requested by the Court or the SEC.

## XIV.

IT IS FURTHER ORDERED THAT, except for gross negligence, willful misconduct, fraud, or breach of fiduciary duty, the Receiver, the Law Firm, and the Accountant, and all persons engaged or retained by the Receiver pursuant to this Order, shall not be liable for any loss or damage incurred by any person or entity by reason of any act performed or omitted to be performed by the Receiver or those engaged or retained by him in connection with the discharge of their duties and responsibilities in connection with this Receivership; provided however, that nothing herein shall limit the immunity of the Receiver and his advisors allowed by law or deprive the Receiver and his advisors of indemnity for any act or omission for which they otherwise have immunity.

## XV.

IT IS FURTHER ORDERED THAT the reasonable costs and expenses of the Receiver, the Law Firm, and the Accountant shall be paid solely from Receivership Assets, including without limitation, the reasonable costs, fees, and expenses of all persons who may be engaged or retained by the Receiver pursuant to this Order to assist him in carrying out his duties and obligations hereunder. Quarterly applications for costs, fees, and expenses of the Receiver, the Law Firm, and the Accountant, and those engaged or retained by the Receiver pursuant to this Order shall be made to the Court, setting forth, in a format acceptable to the SEC, reasonable detail about the nature of such costs, fees, and expenses; provided, however, that, at the discretion of the Receiver, actual invoices may be filed as an exhibit under seal. At least thirty days before making such an application to the Court, the Receiver shall submit the application to the SEC, which may advise the Court whether they have any objection. Upon Order of this Court approving such application, the Receiver may pay up to 80% of the compensation and professional fees and 100% of the expenses of the applicants. At the close of the Receivership, the Receiver shall file with the Court a final application for compensation, fees, and expenses, describing in detail the costs and benefits associated with all litigation and other actions pursued in the course of the Receivership. At that time, any amounts held back during the course of the Receivership will be paid at the discretion of the Court.

## XVI.

IT IS FURTHER ORDERED THAT this Order shall remain in effect unless and until modified by further order of this Court, and that this Court shall retain exclusive jurisdiction of the within proceedings for all purposes.

_____
The Honorable John R. Padova, U.S.D.J.